Michael P. Studebaker #10027 of
STUDEBAKER LEGAL SERVICES P.C.
Attorney for Plaintiff
2550 Washington Blvd., Suite 329"
Ogden, UT  84401
Telephone: 801-627-9100
Fax: 801-708-0827
Email:  mike@studebakerlaw.com

_____

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

_____

| | | |
|---|---|---|
| WILLIAM COX, EDWARD PAULUS, JOHN DOES 1-20, & JANE DOES 1-20, | : | COMPLAINT |
| Plaintiffs | : | Case No.  2:16-cv-53 |
| | : | Judge:  Benson |
| Vs. | : | |
| | : | CLASS CERTIFICATION REQUESTED |
| STATE OF UTAH, WASHINGTON COUNTY, ALAN GARDNER, in his official capacity, DICK SCHONTER, in his official capacity, VICTOR IVERSON, in his official capacity, ZACHARY RENSTROM, in his official capacity, GARY HERBERT, in his official capacity, GREG HUGHES, in his official capacity, WAYNE NIEDERHAUSER in his official capacity, & DOES 1-20, | : : : : : | |
| Defendants | : | |

_____

**COMES NOW**, Plaintiffs in the above matter, by and through their attorney of record,

Michael P. Studebaker, and hereby complains against the Defendants as follows:

**INTRODUCTION**

1.  Pursuant to 42 U.S.C. §1983, the Sixth and Fourteenth Amendments to the United States

Constitution and Article 1 Sections 7 & 12 of the Utah Constitution, Plaintiffs bring this class action

lawsuit to ask this Court for injunctive and declaratory relief to prevent further violations and to

protect the constitutional rights of all indigent persons charged with crimes in the Washington County District Court.

2.  Plaintiffs bring this Civil Rights Action to remedy the above-named Defendants' failure to provide constitutionally adequate legal representation to indigent adults with criminal cases pending in the District Court in Washington County, Utah.  This failure deprives, or threatens to deprive, Plaintiffs of rights guaranteed to them by the Amendments requires states to provide counsel, free of cost the Sixth and Fourteenth Amendments to the United States Constitution, and Article 1, Sections 7 and 12 of the Utah State Constitution.

3.  The Bill of Rights of the United States Constitution guarantees the right of the accused "to have the assistance of counsel for his defense." In 1963, the United States Supreme Court held in *Gideon v. Wainwright*, 372 U.S. 335 (1963), that the Sixth and Fourteenth Amendments requires states to provide counsel, free of cost, to indigent persons charged with felony wrongdoing by the state. The right to counsel requires effective assistance of competent counsel. *McCann v. Richardson*, 397 U.S. 759, 771 (1970).

4.  Utah has delegated the responsibility for the provision of indigent defense serves to its counties. Pursuant to state law, the counties design and administer their own indigent defense programs. Utah Code S 77-32-301.

5.  Utah is one of the only two states in the country that provide no state funding for indigent defense. Utah ranks 48th out of 50 states in its per capita funding of indigent defense.

6.  Defendants have failed to set such standards for the provisions of indigent defenders, or to exercise any supervision to ensure that county indigent defense programs provides constitutionally adequate legal representation. The Defendants do not require that the public defenders are hired on

merit, train them in criminal defense, issue written practice standards, or monitor or limit excessive workloads.

7.  The Defendants underfund it's indigent defense services to the point where the lack of financial resources impedes the delivery of representation.  The Defendants design the indigent defense to minimize potential financial liability rather than to ensure adequate defense representation.  To keep costs low, the Defendants refuse to budget for necessary attorney staff, they refuse to compensate indigent counsel adequately, and they refuse to provide adequate funds for necessary support services such as investigators, expert witnesses, paralegal, and secretarial assistance.

8.  In fiscal year 2016, Defendant Washington County budgeted $760,688 for indigent defense in Washington County.

9.  In fiscal year, 2016, Defendant State of Utah has budged $0 for indigent defense in the State of Utah.

10.  In fiscal year 2016 Defendant Washington County budgeted $2,816,540 for prosecution.

11.  According to SB6, Defendant State of Utah budgeted $18,587,100[1]

## JURISDICTION AND VENUE

12.  The jurisdiction of this Court is invoked under 28 U.S.C. §1343 (3) and 28 U.S.C. S 1331.

13.  The facts giving rise to the claim under 42 U.S.C.  §1983 are the same facts as those giving rise to the claims under Utah Statutory and common law, and as such, the state law claims are subject to the pendent jurisdiction of this court.

14.  Defendants have known for decades that the failure to set adequate an provide the resources to

---

[1] This amount covers the whole State, not just Washington County, but is illustrative of the amount and disparity for indigent defense funding as if any of these cases are brought in Washington County, they will be assigned to the public defenders in Washington County, with no extra funding.

meet them, and the consequent inability to provide constitutionally adequate legal representation, was improper. This is supported by a recently conducted 6th Amendment study in Utah that outlined numerous shortcomings over indigent defense throughout the whole State.

15. The Defendants are officially responsible for the formulation and administration of the budgets for their indigent defense program.

16. Pursuant to 42 U.S.C. §1983, the Sixth and Fourteenth Amendments to the United States Constitution, and Article 1, Sections 7 and 12 of the Utah Constitution, Plaintiffs' rights were violated.

### PARTIES

17. Plaintiff, William Cox, is and at all times pertinent herein has been a citizen of the United States and a resident of Washington County, Utah. He has pending criminal case in Weber County District Court. Mr. Cox is represented by a member of the private bar who has contracted with the Defendants to provide indigent defense services in Washington County. Mr. Cox has not been convicted of a crime and is not seeking monetary damages. If convicted, Mr. Cox faces at least five years in prison.

18. Plaintiff, Edward Paulos, is and at all times pertinent herein has been a citizen of the United States and a resident of Washington County, Utah. He has pending criminal case in Washington County District Court. Mr. Paulos is represented by a member of the private bar who has contracted with the Defendants to provide indigent defense services in Washington County. Mr. Paulos has not been convicted of a crime and is not seeking monetary damages. If convicted, Mr. Paulos faces up to life in the Utah State Prison.

19. Plaintiffs John and Jane Does 1-20 are so listed because Plaintiffs do not yet know the identities

by name of all other potential Plaintiffs in this matter.  In the course of discovery, the names of these

persons will become known. They will then be added as named Plaintiffs.  Plaintiffs reserve the right

at any time before trial to add such defendants by name, as their names become known.  The listing

of these unknown individuals by a "Doe" designation hereby preserves any and all rights or claims

that might be made by such individuals, as if they were named personally herein as Plaintiffs.

19.  Defendant Alan Gardner, in his official capacity, is a duly elected county commissioner who

makes policy for Washington County, and includes such matters as budgets and implementing of an

indigent defense program.

20.  Defendant Dick Schonter, in his official capacity, is a duly elected county commissioner who

makes policy for Washington County, and includes such matters as budgets and implementing of an

indigent defense program.

21.  Defendant Victor Iverson, in his official capacity, is a duly elected county commissioner who

makes policy for Washington County, and includes such matters as budgets and implementing of an

indigent defense program.

22.  Defendant Gary Herbert, in his official capacity, is the duly elected Governor of the State of

Utah and is the head executive for the State of Utah.

23.  Defendant Greg Hughes, in his official capacity, is a duly elected legislature for the State of

Utah, and also is the Speaker of the Utah House of Representatives and has a duty to ensure that the

constitutional rights of the citizens of Utah are protected.

24.  Defendant Wayne Niederhauser, in his official capacity, is a duly elected legislature for the State

of Utah, and also is the President of the Utah Senate and has a duty to ensure that the constitutional

rights of the citizens of Utah are protected.

25. All Defendants have failed in their duties just outlined.

26. Defendant Washington County is a municipal government formatted under the laws of the State of Utah.

27. Defendant State of Utah is the government for the whole State.

28. All "Doe" Defendants are so listed because Plaintiffs do not yet know the identities by name of all other employees, directors, or agency directors who are liable for constitutional violations. In the course of discovery, the names of these commanders, troopers and people will become known. They will then be added as named Defendants. Plaintiffs reserve the right at any time before trial to add such defendants by name, as their names become known. The listing of these unknown individuals by a "Doe" designation hereby preserves any and all rights or claims that might be made against such individuals, as if they were named personally herein as defendants.

## RULE 23 CLASS ACTION ALLEGATIONS

29. Plaintiffs Cox & Paulus, (collectively, the "Class Plaintiffs") bring this action pursuant to Civil Rule 23(a) and (b)(2) on behalf of themselves and all others similarly situated (collectively, the "Class Members") as members of the following proposed plaintiff class (the "Class"):

> All indigent persons who have been or will be charged with one or more crimes in the district court for Washington County, Utah, who have been or will be appointed a public defender, and who continue to have or will have a public defender appearing in their cases.

30. The representative Plaintiffs have the resources and interests to adequately protect the Class.

31. The Class is so numerous that the individual joinder of all members is impracticable. It is believed that the potential Class just in Washington County will exceed 2,000 persons. At any point in time, scores of indigent persons are charged with one or more crimes in the District Court in

Washington County, Utah, are appointed a public defender, and continue to have a public defender appearing in their cases.

32.   There are questions of law and fact common to the Class.  The questions of law and fact common to all members of the Class include but are not limited to: (a) whether Defendants have a duty to provide indigent persons charged with crimes with assistance of counsel; and (b) whether Defendants have breached their duties.

33.   The Class Plaintiffs' claims are typical of the claims of the Class.

34.   The Class Plaintiffs' will fairly and adequately protect the interests of the Class.  There are no conflicts of interest between the Class Plaintiffs' and other Class Members.  The Class Plaintiffs will vigorously prosecute this action on behalf of the Class.  The Class Plaintiffs' are represented by competent counsel who will vigorously prosecute the case on behalf of the Class.

35.   Defendants have acted or refused to act on grounds generally applicable to the entire Class.

### FACTS

36.   Plaintiffs adopt by reference paragraphs 1-35 herein.

37.   Defendants enter into fixed-price contracts with local attorneys to provide indigent defense services to those charged with criminal wrongdoing in the district court.  The contacts are structured and administered in a manner that impedes the ability of the attorneys to provide constitutionally adequate legal representation to their clients, including Plaintiff.

38.  Because of the deficiencies in the Defendant's indigent defense program, which include lack of sufficient funding, sufficient attorney and professional staff, training, workload limits, adequate contracting standards, adequate attorney qualification standards, and other indigent defense policies and procedures, the Defendants' indigent defense program is not providing Plaintiff with the legal

representation to which they are constitutionally entitled.

39.  At the time this lawsuit was filed, Plaintiffs were being represented by public defenders. During that representation, Washington County did not renew the public defender contract for Mr. Paulus' public defender which makes it impossible for him to continue to his currently scheduled trial date.

40.  Mr. Paulus faces 25 years to life in the Utah State Prison if he is convicted of his crimes.  Mr. Paulus had a previous public defender, Ed Flint, who had obtained a private investigator interview a number of witnesses, but Mr.  Flint had not retained any expert witnesses because of the contract issues with the Defendants as it relates to the public defender system in Washington County.  As of the date of the filing of this action, Aric Cramer, who had two contracts and subcontracted with Ed Flint, did not have these two contacts renewed.  Mr.  Cramer would also subcontract with Ariel Taylor.  On information and belief, one of those contacts are still unfilled.

41.  On information and belief, attorney Ariel Taylor has been awarded one of those two vacant contacts.  However, Mr. Taylor has no knowledge or involvement in the Mr. Paulus' case prior to the non-renewal of Mr. Flint and Mr. Cramer's contracts.

42.  On information and belief, Defendants have been forcing/coercing Mr. Taylor to take on new appointments and work existing cases of both of the non-renewed contracts in the interim.

43.  On information and belief, Mr. Taylor is not prepared to go to trial for Mr. Paulus' case.  It is not reasonable for Mr. Taylor to be prepared to go to trial while he is responsible for 350 (700 if both contracts) cases, approximately 80% felonies, 20% Class A Misdemeanors.

44. Mr. Cox faces 0 to 5 years prison each count.  Currently Mr. Cox is being prosecuted by the Utah Attorney General's office, but no funding from the state for the public defense.  Defendants use

the same contact and public defenders for his case as non Attorney General prosecutions.

45.   Defendants' procedures for funding indigent defense impedes the provision of adequate legal representation as it relates to Plaintiffs and Class Members.

46.   Defendants exercise no supervision over the county indigent defense programs.  They have also failed to establish, require, or enforce any practice standards or gridlines for the portions of non-capital indigent defendants receive constitutionally adequate representation.

47.   National standards pertaining to the administration and provision of indigent defense programs have been in existence for decades[2].  State and local entities across the country have adopted many of these practices standards.  Washington County has refused to do so.

I.        Failure to adopt and publicize job descriptions and set job qualifications

48.   Defendants hire, award contracts to, or appoint attorneys who have neither the experience, inclination, nor resources to provide adequate legal representation to indigent clients.

49.   National standards for the administration of indigent defense services include policies and procedures designed to ensure that counsel are competent advocates and familiar with criminal law and procedures[3].

---

[2]

See, e.g., American Bar Association (ABA)  Standards for  Criminal Justice:  Prosecution Function and Defense Function (1993); ABA Standards for Criminal Justice: Providing Defense Services (1992); National Legal Aid and Defender Association (NLADA) Performance Guidelines for Criminal Defense Representation (1995); NLADA Guidelines for Negotiating and Awarding Governmental Contracts for Criminal Defense Services (1984); NLADA Standards for the Administration of Assigned Counsel Systems (1989); NLADA Guidelines for Legal Defense Systems in the United States  (1976);  President's National Advisory Commission on Criminal Justice Standards and Goals, Report of the Task Force on the Courts (1973).

[3]

See,  e.g., ABA Standards for Criminal Justice: Providing Defense Services, Standards 5~2.2, 5 ~ 3.3 (b )( vi); NLAD A Guidelines for Legal Defense Systems in the United States, Guidelines 2.3,  5.9; NLADA Guidelines for Negotiating and Awarding Governmental Contracts  for Criminal Defense Services, Guideline III~7; NLADA Standards for the Administration of Assigned Counsel Systems, Standard 4.1.1 (a); National Conference of Commissioners on Uniform State Laws, Model Public Defender Act §5

50.   The Defendants have no adequate written hiring, appointment, or contracting standards for indigent defense counsel.  The Defendants do not hire, appoint, or contract pursuant to objective, publicized criteria.

51.   Lacking identifiable, objective, published hiring and job qualifications, the Defendants hire, appoint, or contact for attorneys not because they are competent, but instead because they are willing to work for the contract amount, they will not challenge the county attorney by advocating vigorously for their clients, or will they not impede the ability for the prosecution to move cases forward expeditiously.  Consequently, many indigent defense counsel lack the qualifications and experience necessary to provide constitutionally adequate legal representation.

II.       Failure to Establish Practice Standards

52.   The national standards and professional rules of responsibility define adequate assistance of counsel as requiring, among other things, that defense counsel: (a) have adequate knowledge of the relevant areas of the law[4]; (b) act with reasonable diligence and promptness, avoiding unnecessary delay in the disposition of cases[5]; (c) provide representation at every critical stage to their clients' proceedings[6]; (d)  conduct reasonable factual and legal pre-trial investigations in to the charges against their clients, pursue available formal and informal discovery procedures, and use appropriate

---

[4]
See, e.g., ABA Standards for Criminal Justice: Providing Defense Services, Standards 5-1, 5-2.2; NLADAPerformance Guidelines for Criminal Defense Representation, Guideline 1.2; Utah Rules of Professional Conduct, Rule 1.1.

[5]
See,  e.g., ABA Standards for Criminal Justice: Prosecution and Defense Function, Standards 5-1.3, 4-3.6.

[6]
See, e.g., NLADA Performance Guidelines for Criminal Defense Representation, Guideline 1.1.

and necessary experts[7]; and (e) consult with their clients to elicit relevant information about the case, to inform clients of their rights, and to enable clients to make informed decisions about the direction of their cases[8].

53. These standards are not met in Washington County.

     III.    <u>Failure to Train</u>

54. Defendants do not train new indigent defense counsel who start with little or no prior criminal experience.

55. Current indigent defense counsel receive neither the adequate time nor the adequate resources to continue legal education. This is in stark contrast to what state's attorneys receive.

56. National standards require training, professional development, and continuing legal education. Indigent defense counsel must acquire and maintain lawyering skills as well as keep current with new developments in the complex and rapidly changing field of criminal law.

57. Lacking formal orientation, newly hired attorneys have no opportunity to acquire and maintain the skills and legal knowledge necessary to put the prosecution's case to the crucible of adversarial testing.

58. Lacking ongoing training by the Defendants, indigent defense counsel have no formal opportunity to hone their skills and remain knowledgeable of significant changes in the law without personally funding the travel and registration expenses required to participate in continuing

---

[7]

See, e.g., ABA Standards for Criminal justice, Prosecution and Defense Function, Standards 4-4.1,4-4.4,4-4.6.1; NLADA Performance Guidelines for Criminal Defense Representation, Guideline 4.1,4.2,4.3.

[8]

See, e.g., ABA Standards for Criminal Justice: Prosecution Function and Defense Function, Standards 4-3.1 (a), 4-3.2, 4-3.8, 4-5.1, 4-5.2(b); NLADA Performance Guidelines for Criminal Defense Representation, Guidelines 1.3(c), 2.2, 7.5; Utah Rules of Professional Conduct, Rule 1.4.

education and training programs outside the State.

59.  These shortcomings have adversely affected Plaintiffs because they are not given adequate legal representation by their public defender.

IV.    Failure to Monitor Excessive Workloads

60.   Defendants have not implemented effective mechanisms for monitoring the performance of public defenders.

61.  Defendants have not adopted meaningful publicized criteria for evaluating public defenders.

62.  Defendants do not engage in systematic monitoring and evaluation of the performance of public defenders based on published criteria.

63.  Defendants do not obtain the meaningful information essential to fulfilling their constitutional duties of providing indigent defense services.

64.  Defendants have not established any system for ensuring that the public defenders investigate cases, prepare for trial, and communicate timely and adequately with clients.

65.   Defendants do not take reasonable steps to ensure that the private practices of the public defenders do not impair the public defense system.

66.  Defendants have failed to establish an effective system for preventing conflicts of interest.

67.  Defendants have failed to adequately respond to complaints about their public defense system.

68.  If Defendants adequately monitored the public defenders, they would have found that many of them regularly fail to return calls from indigent defendants in a timely manner, if at all.

69.  If Defendants adequately monitored the public defenders, they would have found that many of them regularly fail to meet with indigent defendants in advance of court hearings.

70.  If Defendants adequately monitored the public defenders, they would have found that many of

them regularly fail to devote sufficient time to interviewing and counseling indigent defendants.

71.  If Defendants adequately monitored the public defenders, they would have found that many of the public defenders rarely, if ever, investigate the charges made against indigent defendants.

72.  If Defendants adequately monitored the public defenders, they would have found that many of the public defenders regularly fail to pursue or review discovery from prosecution in public defense cases.

73.  If Defendants adequately monitored the public defenders, Defendants would have found that many of the public defenders regularly fail to make sufficient preparations for court hearings involving indigent defendants.

74.  If Defendants adequately monitored the public defenders, Defendants would have found that many of the public defenders regularly fail to stand with indigent defendants during court hearings.

75.  If Defendants adequately monitored the public defenders, Defendants would have found that many of the public defenders rarely, if ever, take cases to trial on behalf of indigent defendants.

76.  If Defendants adequately monitored the public defenders, Defendants would have found that many of the public defenders devote a substantial portion (if not a majority) of their time to working on private cases, whether civil or criminal.

77.  If Defendants adequately monitored the public defenders, Defendants would have found that the private work performed by many of the public defenders is performed to the detriment of public defense services.

78. Defendants' underfunding of indigent defense services results in unmanageably large workloads for individual indigent defense counsel. Workload affects the productivity and effectiveness of indigent defense counsel more directly than any other variable. This is especially true in Washington

County where the Defendants do not offer full-time indigent defense services.

79.  National standards explicitly provide for the development of workload standards. Indigent defense counsel should not carry a workload which "interferes with the rendering of quality representation, endangers the client's interest in the speedy disposition of charges, or may lead to the breach of professional obligations[9]

80.  The National Advisory Commission on Criminal Justice Standards and Goals states that a single full-time indigent defense counsel can reasonable be expected to handle no more than (a) 150 felonies per year; or (b)400 misdemeanors per year; or (c) 200 juvenile delinquency cases per year[10].

81.  Workload limits may be lower for attorneys, like those in Washington County, who work part-time, have limited support services, must travel frequently or great distances to perform their jobs, or have other job related supervisory or administrative responsibilities.

82.  Defendants are aware of these standards and willfully ignore them.

83.  For example, after the recent 6th Amendment study, it was published in various forms of media that there are serious deficiencies in indigent defense in Utah.  Rather than correcting these issues, Defendant State of Utah has not acted to correct any funding or oversight issues.  Rather than correcting these issues, Defendant Washington County did not reauthorize two different public defender' contracts (Aric Cramer and Edward Flint).

---

[9]

ABA Standards for Criminal Justice: Prosecution Function and Defense Function, Standard 4-1.3.  See generally ABA Standards for Criminal Justice: Providing Defense Services, Standard 5-5.3; NLADA Guideline for Negotiating and Awarding Government Contracts for Criminal Defense Services, Guideline 1II-12; NLADA Standards for the Administration of Assigned Counsel Systems, Standard 4.1.2; NLADA Guidelines for Legal Defense Systems in the United States, Guidelines 5.1, 5.2, 5.3; President's National Advisory Commission on Criminal Justice Standards and Goals, Report of the Task Force on the Courts, Standard 13.12.

[10]

President's National Advisory Commission on Criminal Justice and Goals, Report of the Task Force on the Courts, Standard 13.12.

84. On information and belief, the Defendants' do not maintain caseload data.  The Defendants do not monitor the workloads of the indigent defense counsel to ensure that they are manageable, and that the attorneys are devoting sufficient time to their cases.

85. At least two former public defenders in Washington County, Aric Cramer and Edward Flint, both closed over 350 felonies in FY 2015–including murder and sex crime cases.

86. These shortcomings have adversely affected the Plaintiffs because are not given adequate legal representation by his public defender.

### VI.    Failure to Compensate Attorneys Adequately

87. As Outlined herein, the indigent defense program in Washington County and the State of Utah is not adequately funded by the Defendants.

88.  In the further effort to minimize their financial exposure, Defendants do not fund support services and resources necessary for competent criminal defense practice.  All contract attorneys are expected to pay for such services out of their contract fee.

89. As a result, many indigent defense counsel go without such services.

90. To obtain funding for expert and investigative services, defense counsel must seek approval from the District Court and Washington County Attorney's office.

91. Lacking support services or the funds to provide, take time away from representing indigent clients to tend to clerical tasks or perform investigations, rely solely on police detective work, or forego legal research and factual investigations necessary for constitutionally adequate legal representation.

**HARM TO PLAINTIFF: FAILURE TO TAKE BASIC STEPS TO PROVIDE**

**ADEQUATE LEGAL REPRESENTATION**

92.  Hampered by a lack of experience, excessive workloads, inadequate compensation, the lack of support services, and the absence of meaningful administrative oversight and technical assistance, indigent defense counsel do not or are unable to perform even the most basic tasks necessary to provide adequate representation to their clients under the current funding and supervision system. They do not or are unable to act as an effective adversarial check upon the prosecution function based on these shortcomings.

93.  Regularly defense counsel do not, or are unable to, meet and confer with their clients in a meaningful manner prior to critical stages in their clients' criminal proceedings.  While they do have some contact, based on the current funding system, as a whole they do not or are unable to visit clients in jail and are unavailable by phone in a meaningful manner.  Because of the current indigents defense system, they limit their client contact to a few minutes in the courthouse immediately prior to a court appearance.  This is what happened to Plaintiffs.

94.  Many indigent defense attorneys do not or are unable to adequately investigate the charges against their clients.  Most rely upon the information in the County Attorney's files to make assessment of their clients' cases.  They do not, or are unable to, meet with or subpoena witnesses, visit the scene of the crime, or examine evidence.  This is what happened to Plaintiffs.

95.  Those indigent defense counsel who do take cases to trial do not or are unable to adequately prepare.  They rarely use the expert witnesses.  Nor do they request, and in most cases, cannot obtain, independent verification of testing and forensic work conducted by the state crime laboratory.  This is what happens to Plaintiffs.

96.  Innocent clients and clients with meritorious defenses are compelled to plead guilty.  They waive their rights to trial and other due process protection under duress, without the sufficient

understanding of the protections they are waiving.  This is what happened to Plaintiffs.

## COUNT I

### United States Constitution Sixth and Fourteenth Amendments, and 42 U.S.C. S 1983

97.  Plaintiff adopts by reference paragraphs 1-96 herein.

98.  Defendants' failure to provide Plaintiff with adequate legal representation violates Plaintiffs' rights under the Sixth and Fourteenth Amendments to the United States Constitution, including, but not limited to, his right to effective assistance of counsel.

## COUNT II

### Utah Constitution Article 1, Sections 7 and 12

99.  Plaintiff adopts by reference paragraphs 1-98 herein.

100.  Defendant's failure to provide Plaintiff with adequate legal representation violates Plaintiffs rights under Article 1, Sections 7 and 12 of the Utah Constitution.

## CONCLUSION

101.  Plaintiffs adopt by reference paragraphs 1-100 herein.

102. As a result of Defendants' acts and omissions, including the policies, practices, and procedures for public defense that Defendants have maintained and continued, indigent persons charged with crimes in the Washington County District Court have suffered or are at immanent and serious risk of suffering harm.  Among other things, these indigent persons must make decisions about their rights or contest issues without adequate factual or legal investigation by their attorneys. These indigent persons are waived without proper consultation and advice. These persons are deprived of the services of investigators and expert witnesses. The cases of these indigent persons are not properly prepared for trial. These indigent persons do not receive meaningful benefits in exchange

for guilty pleas.

103.  There is a substantial risk that Defendants' violations will continue and will deprive the Class

Plaintiffs and other Class members of their rights. Among other things.

104.  Defendants have persisted in a wrongful course of conduct for many years.

105.  Defendants have persisted in a wrongful course of conduct even though Defendants knew or

should have known that indigent persons were being deprived of their rights.

106.  Defendants have failed to take prompt action to fix their public defense system.

107.  Defendants have allowed their public defense system to descend into chaos.

108.  These constitutional shortcomings are ongoing and are clearly capable of repetition yet evading

review.

  **WHEREFORE**, the Plaintiffs' prays for relief as follows:

  A.  For Certification of a class as defined above;

  B.  For a declaration that Defendants are depriving Class Members of their rights to the
      assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United
      States Constitution;

  C.  The issuance of preliminary and permanent injunctions restraining Defendants from
      violating the Sixth and Fourteenth Amendments to the United States Constitution and
      Article 1 Sections 7 and 12 of the Utah Constitution;

  D.  The issuance of a preliminary and permanent injunction requiring Defendants to
      implement a full time indigent defense program on parity with the same programs
      which the prosecutors and government attorneys have.

  E.  For an award of Plaintiffs' costs and attorneys' fees; and

F.      For such and other and further relief as the Court may deem just and proper.

DATED this the 22nd day of January, 2016.


                                                    /s/ Michael P.  Studebaker
                                                    Attorney for Plaintiffs